## EDWARD WILSON

### v.

## HARMON MARSHALL.

*Landlord and Tenant—Rental of House by Landlord for Use of Farm Tenant—Expiration of Leases—Holding over—Liability of Grantee of Owner of Farm to Lessor of Tenant House.*

Upon the case stated, this court holds that the grantee of the owner of a farm was not liable to the owner of a tenant house which had been leased by his grantor for the use of his farm tenant, for the rent of such tenant house, subsequent to the expiration of an express contract in existence at the time of the sale of the farm, though the tenant continued to occupy the house.

[Opinion filed December 16, 1889.]

APPEAL from the Circuit Court of Rock Island County; the Hon. ARTHUR A. SMITH, Judge, presiding.

Mr. BIRD BICKFORD, for appellant.

Messrs. SWEENY & WALKER, for appellee.

When the appellant succeeded to the rights of Preston and Morey in the land and crops on October 12, 1887, one-fourth of the year yet remained, and he, as assignee of the crop, became liable to the appellee for the rent of that year, and likewise became the tenant of the appellee. The occupancy of the appellee's house by Enright was the possession of Preston, Morey and the appellant, and made them tenants of appellee; and this relation of tenant and landlord existed between appellant and appellee from the time he succeeded to the rights of Preston and Morey on October 12, 1887, to March 1, 1888.

And this relation so existing then, and the occupancy remaining the same after March 1, 1888, without any new arrangement, the law says that the old relation continued upon the same terms. Taylor's Landlord & Tenant, Secs. 22, 525; Prickett v. Ritter, 16 Ill. 97; Hunt v. Morton, 18 Ill. 76; McKinney v. Peck, 28 Ill. 174; Clapp v. Noble, 84 Ill. 64; Clinton Wire C. Co. v. Gardner, 99 Ill. 160; Webster v Nichols, 104 Ill. 173.

LACEY, J.   This suit was commenced by appellee against appellant before a justice of the peace. The cause of action sued on by appellee is as follows: In 1886 one Preston, residing in La Salle county, and owning a farm in Rock Island county, employed one Zimmerman to superintend the renting of it. The latter rented it to one Enright for the year 1886, commencing the first day of March of that year, for one year. The farm not having a house on it for a tenant, Preston, through his agent, Zimmerman, bargained with appellee for the rental of his house for one year for a rental of $48 per year, the rent to be paid out of the first crop harvested (that is, Preston's share); and Preston's tenant, Enright, moved into appellee's house and worked the land and still

holds the house, and is still on the farm, but under a ne lease made in April, 1888, by appellant, the then owner of the farm. After the expiration of the lease to the farm from Preston to Enright, the latter, at the end of that year, continued to occupy the farm for another year without any new contract of renting, on the same terms; also continued to occupy the house of the appellee on the same terms. For the first year the rent of appellee's house was paid, and appellee has received his entire rent for the year 1887, and this suit is brought by appellee to recover the rent for the year 1888. In June, 1887, Preston made a voluntary assignment of all his real and personal estate to Morey, the assignee, for the benefit of his creditors. On the 17th day of October, 1887, Morey, as assignee of Preston, conveyed the farm in question to the appellant, Wilson. The deed conveyed the land to appellant absolutely, subject to all unpaid taxes and to all liens and incumbrances, and it is added, "together with the share of the crops belonging to Preston and grown thereon, together with all the improvements, rights, privileges and appurtenances, subject to all liens and incumbrances, unless expressly excepted, released or discharged, and subject to all terms and conditions," etc.

On the 19th day of April, 1888, the appellant went from his home in La Salle county, to Rock Island, to where his farm was situated, and found the tenant had sown some of the land in rye and was proceeding to farm it for the year 1888, when he leased the land to Enright, executing an entire new lease, in which the appellee was not considered, and in which no agreement was made to pay appellee any part of his rent. It appears from the evidence that appellant never at any time made any express agreement with appellee to pay him his rent for the house, and unless an agreement can be implied as a legal result from the facts, no recovery can be had. The court below tried the case without a jury, and gave judgment against appellant for the rent of the house—$48 for the year 1888, from which judgment this appeal is taken. As regards the crops of 1887 or Preston's rent conveyed to appellant subject to all liens, it will not be denied that if appellant

received them in an amount sufficient to pay appellee's house
rent he would have been liable for the rent.   But as the rent
for 1887 has been paid, we need not notice that question fur-
ther.   The only question remaining to be considered, is as to
his liability to pay appellee's house rent for the year 1888.
The liability of the appellee, if we can understand the propo-
sition, is that Enright, because he had remained during the
year 1887, and had had no notice to quit, became a tenant of
appellant from year to year, and after the first day of March,
1888, still being in possession and cultivating the land, was
then a tenant of appellee, with right to hold the premises for
the year 1888; that the appellant, by allowing this to take
place, " elected to rent the appellee's house for the year 1888
on the same terms that Preston had agreed to pay," to wit,
$48 for the year, " and succeeded to the rights of and became
bound to perform the covenants of his grant to Preston."
Citing R. S., Chap. 80, Secs. 14 and 15.   It is insisted also
that those rights having become fixed, appellee could not
change them by making a new lease to Enright.   And that
the lease in April, 1888, to Enright, could have no effect to
release appellant.   We are unable to accede to the claim made
by the appellee in regard to the supposed accruing liability
of appellant for the rent of the house for the year 1888.
The statute cited provides in substance as follows:   "Sec-
tion 14.   Grantees of any demised land shall have the
same remedies, by action or otherwise, for the non-perform-
ance of any agreement in the lease, or for the recovery
of any rent, etc., as their grantor or lessor might have had if
such reversion had remained in such lessor."   Section 15 pro-
vides to the converse of the above, and gives the lessees of
any land the same remedy, by action or otherwise, against the
lessor, his grantors, assigns or personal representatives, for
breach of any agreement in such lease, as such lessee might
have had against his immediate lessor.   *Provided*, this section
shall have no application against incumbrances, or relating to
the title or possession of the premises demised.

We are unable to see how the above statute can assist the
appellee.   He was neither the lessee of the demised farm, nor

the grantee. He was alien to the title in any way. Enright was the lessee of the original owner, Preston, and under the statute could have any action against appellant, Wilson, as the grantee of Preston, through his assignee, for the enforcement of his contract of leasing, as he could have had against the original lessor, Preston; and the appellant, Wilson, as the grantee of Preston, as above stated, could have the same remedy on the lease as his grantor. But how could appellee, who was an entire stranger to the lease, have any remedy against appellant, who was the grantee of the land from the lessor or owner? There was a personal contract between Preston and appellee with reference to the renting of the house, but no privity of estate as to the farm that was leased to Enright alone, with only a pledge of the landlord's rent to accrue for the payment of the house rent. This we do not regard as being an estate running with the land. After appellant became the grantee . of the land, there was neither privity of contract between him and the appellee as to the payment of the house rent nor of estate as regarded the land, and hence he could not certainly be regarded as the tenant of appellee for the house.

The class of security given by Preston to appellee for the house rent was a mere verbal mortgage of the landlord's share of the crop when it came into existence, and was wholly collateral to any estate in the farm. Such lien would hold good as against a purchaser like appellant, who only purchased Preston's interest in the rent, subject to all liens existing at the time of the execution of the deed; but after that time, Preston, having parted with the entire estate in the land, could neither rent it or mortgage it, either by express contract or otherwise. After that the appellant held the entire estate in the land, and could rent it or not as he liked. He could accept Enright as his tenant on any terms he chose, either under the terms of the old lease or exact a new one. The appellee, having no right to claim anything through Enright, they being strangers to each other, as regards the contract for the house renting, and having only required a lien in Preston's interest in his share of the crops for one year, by contract personal to themselves, could claim no interest in the crops

Wilson v. Marshall.

against the new owner of the land after the date of the assignee's deed, he never having agreed to stand good for the rent.

What agreement, if any, Preston had with Enright in regard to furnishing him the house, the record does not inform us. We only know that he did furnish him the house and made himself personally responsible for it as well as gave a pledge of his share of the crops, and that Enright occupied it. As far as the record discloses, Enright never had any connection with this contract as a party, in the slightest degree; even if Preston had agreed to furnish Enright the house, he might vacate the house at any time without personal responsibility to any one so far as the proof shows. Preston alone was responsible to appellee for the rent. So far as the question involved here is concerned, Enright's connection with the transaction may be laid out of view entirely, and the transaction considered the same as though Preston had rented the house to be occupied by any other person, or for his own use, and the lien had been given on the rents of this land as security for the house rent, just as it was done in this case. In that case, had Preston continued to hold the house the same as was done, after the expiration of the year, and had become tenant from year to year, and the appellant have become the purchaser of the land the same as he did, could appellant be legally held responsible for the rents for appellee's house in the manner here contended for? After appellant became the purchaser and took possession of the land this was full notice to appellee that Preston had parted with his title and that he would be unable to secure the rent as heretofore, and if he was unwilling to take Preston for the rent personally, he had his remedy to put an end to Preston's tenancy of the house, or force him to give new security.

The fact that a landlord is benefited by his tenant having a house to live in will not make such landlord liable to the owner of the house for the rent due from the tenant or any one else renting the house for him. It would require his own personal contract to make him so liable.

Even if Enright had leased the house of appellee, neither

the former landlord, unless he were security on the lease, nor the appellant, who succeeded to the title, would be liable for the house rent.    This is self-evident, because appellee does not claim title through Enright.

It is a question not yet decided by our Supreme Court, so far as we are aware, whether, under sections 14 and 15 of the statute above cited, attornment to the grantee of the lessor on the part of the tenant is necessary to establish the relationship of landlord and tenant, under existing leases between the grantee of the lessor and the tenant of the grantor.    Under the former statute it was necessary.    The language of the above section No. 14 is not materially different from chapter 34, section 1, 32 Henry VIII, under which statute it was held in Fisher v. Deering, 60 Ill. 114, and other cases, that attornment was necessary.    See Scheidt v. Belz, 4 Ill. App. 431.    In this case, although there was no attornment by Enright to appellant prior to March 1, 1888, and in fact none was ever made, as we regard it, it is not necessary to decide the point, and we will refrain from giving an opinion here.

From what has been said it will be seen that in the opinion of this court, the court below erred in finding for appellee. We therefore reverse the judgment of the court below, without remanding, as there appears no right of recovery.

*Judgment reversed.*